[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff wife, 38, whose birth name is Cathey, and the defendant husband, 42, married on June 27, 1987 in Locust Valley, New York. There are two children of the marriage Benjamin Nettleton d.o.b. June 23, 1991 and Paget Dennison d.o.b. November 7, 1993. The parties filed a "Stipulation Re: Custody" dated January 6, 2000 which provides for a shared custody arrangement, the court intends to incorporate it in the judgment.
The plaintiff spent fours at college but left in her senior year in 1983 to seek employment in New York City which she obtained. She continued to work after marriage until early 1988 when she reduced her work week to three days. She stopped working in 1991 when she became pregnant with the older child. She had conducted a dried wreath business from her home in 1988-1990 and is now attempting to establish a gardening business, netting $3,700 last year. She also was a yoga instructor part-time until April, 1999 when she was diagnosed as having Lyme Disease. She also has been treated for depression in 1994 and for two years was taking Lithium.
The defendant graduated from college in 1980 and then entered the Merrill Lynch trainee program. He obtained the S.E.C. Series 3 and Series 7 licenses. He left in November, 1982 to join Citibank where he remained until December, 1985. He again left to join U.S.G.I., a mortgage servicing company where he earned as much as $500,000 in the late 1980's. In February, 1996 he joined CBA Securities. On March 9, 1998 he joined W.J. Mayer Co. where he has a draw account, capped at $100,000 for the year, against commissions earned as a mortgage backed securities broker. The CT Page 1648 defendant lists on his financial affidavit that he had received commission of $268,333 through the end of December, 1999 for the term of his employment.
Although the defendant has an earned commission of $16,266 as of December 23, 1999, it was offset on the January 15, 2000 commission report. Since this appears to be his employer's usual practice, the court accepts the totals. However, 1999 was much better than 1998. He drew $81,249.87 in 1998 and was credited with $46,646 commissions, leaving a negative draw balance of $34,603.87 at the end of the year, (Plaintiff's Exhibit #10). In 1999 his final pay period statement (Plaintiff's Exhibit #12) lists total earnings of $187,082.77, and total net pay of $124,549.26 or weekly net of $2400. After adding the plaintiff's weekly net of $70 weekly the combined net income of $2,470 on the Child Support and Arrearage Guidelines requires total child support of $561 with 97% due from the defendant to the plaintiff. The nominal amount of dividends and interest received by the defendant does not impact this result. The court finds that the best interests of the children will be served by deviation from the guidelines as allowed by Section 46b-215a-3 and in particular (5) coordination of total family support. The court finds that an unallocated order is appropriate.
The court notes that the plaintiff has an interest in the remainder of three trusts she identifies as:
 "1) Great-Grandfather's Irrevocable Trust 2) Grandmother's Irrevocable Trust 3) Grandfather's Irrevocable Trust"
The plaintiff's mother is apparently the income beneficiary of all the trusts. What will remain when her 62 year old mother dies cannot now be determined. The plaintiff's financial affidavit is clear that no income is currently reaching her from the trustees. The plaintiff's mother is paying $10,000 each for private school tuition of her grandchildren. The court cannot treat the trusts as current assets of the plaintiff. The tuition payments are gifts.
The parties recently sold their home, the net proceeds of about $811,600 are presently being held in escrow. The defendant paid $360,000 when the property was purchased, mortgaging the balance for $400,000. CT Page 1649
The defendant also owns a coop apartment at 741 West End Street, New York City which he values at $100,000 subject to a first mortgage of $39,000. He acquired the apartment prior to the marriage. It is currently rented.
The defendant also has securities accounts totaling $115,000 and an IRA account valued at $160,700. He holds title to a 1991 Volvo valued by him at $7,500 which the plaintiff uses. He has a whole life policy insuring his life for $100,000 having a cash surrender value of $9,500 and a term policy for $600,000. The plaintiff and children are the named beneficiaries on both policies. He has a remainder interest in the trust created by his grandfather in Canada (Plaintiff's Exhibits #25 and #26). The income is currently being paid to his mother and four other persons of her generation. Upon the death of the last surviving income beneficiary the trust will be divided into 29 parts. The defendant has a 25% interest in one such part. No value can be assigned to it by the court.
The defendant lists miscellaneous personal property as follows:
 Art $15,000 Silver/China $15,000 Furniture/furnishings/ $35,000 Antiques Jewelry, Etc. $40,000 34' Sailboat $45,000 _________ Total $150,000 (Estimated values)
The causes of the marriage breakdown are without fault in the court's opinion. He enjoyed sailing while she enjoyed gardening and yoga. They separated when the house was sold in August 1, 1999 but they had been occupying the house on alternate nights for the previous two years on a "nesting" arrangement.
Having reviewed the evidence in light of the relevant case law as well the relevant statutes including § 46b-81 and §46b-82, the court enters the following decree:
1. Judgment is entered dissolving the marriage on the ground of irretrievable breakdown. Each party is declared unmarried.
2. The court adopts and orders the parties' stipulation re: CT Page 1650 custody dated January 6, 2000 which provides for shared legal and physical custody, a copy is attached and incorporated herein.
3. The defendant shall pay to the plaintiff as unallocated periodic alimony and child support the sum of $5000 monthly until the death of either party, the plaintiff's remarriage, or future court order based on § 46b-86. A wage withholding order is entered pursuant to statute.
4. The defendant shall continue to provide medical and dental insurance coverage for the children and shall pay any uninsured or unreimbursed bill balances. He shall cooperate with the plaintiff is she elects medical coverage via COBRA. § 46b-84
(e) applies to this order.
5. The New York City coop apartment shall be sold and the defendant shall pay to the plaintiff the sum of $13,000 from the net proceeds.
6. The 1991 Volvo is awarded to the plaintiff.
7. The net proceeds from the sale of the marital home shall be divided equally by the parties.
8. The master CMA (#877-52679), the CMA sub-account (#877-13A31), the SEP account (#877-81039) and the defendant's IRA account, totaling $275,680 on the defendant's financial affidavit, shall be divided equally between the parties.
9. The defendant's 34' boat is ordered sold with the net proceeds to be divided equally between the parties. Jurisdiction is retained for further orders facilitating sale if needed.[1]
10. The defendant shall continue to maintain the $100,000 Northwest Mutual policy naming the plaintiff primary beneficiary so long as the defendant is obligated to pay periodic alimony. The defendant shall continue to maintain the $600,000 Northwest Mutual term policy naming the children as a group as primary beneficiaries for so long as he is responsible for child support. The purpose of this order is to provide the beneficiaries with protection in the event of the defendant's untimely death and is not intended as a final division of assets. This provision shall be modifiable as future circumstances may dictate.
11. The defendant shall retain his interest in the Georges Elie CT Page 1651 Amyot Canadian Trust.
12. The plaintiff shall retain her interest in her family's various trusts.
13. The parties shall retain their various items of personalty as now possessed as theirs respectively.
14. The liabilities of each party shall be settled without contribution from the other party except as provided infra.
15. The defendant shall pay to the plaintiff, as an allowance to prosecute, the sum of $15,000, payable from his share of the net proceeds awarded in paragraph 6 supra.
Counsel for the plaintiff shall prepare the judgment file.
HARRIGAN, J.